**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **H.O.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **Case No. 4:26-cv-491-CDL-CHW** |
| | : | **28 U.S.C. § 2241** |
| **Warden, STEWART DETENTION CENTER,** | : | |
| | : | |
| **Respondent.** | : | |

## ORDER AND RECOMMENDATION

Before the Court is Petitioner H.O.'s application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). For the following reasons, it is **RECOMMENDED** that the motion (Doc. 1) be **DENIED**. Also pending before the Court are Petitioner's motions for temporary restraining order (Docs. 10, 23), motions for release (Docs. 17, 18, 21, 24), motion for discovery (Doc. 16), motion to seal case (Doc. 19), and motion to be returned to the district. (Doc. 22). It is **RECOMMENDED** that Petitioner's motions for TRO (Docs. 10, 23), motions for release (Docs. 17, 18, 21, 24), motion to seal (Doc. 19), and motion to be returned to the district (Doc. 22) be **DENIED as moot**. It is also **ORDERED** that Petitioner's motion for discovery (Doc. 16) be **DENIED**.

## BACKGROUND

Petitioner, a native of the U.S.S.R. and citizen of Russia, first entered the United States sometime prior to October 1994. (Doc. 8-1, ¶¶ 4–5). On August 9, 1994, Petitioner pleaded guilty in the Municipal Court of California, Los Angeles Judicial District, to one count of Assault with a Deadly Weapon in violation of California Penal Code § 245. (Doc. 8-3, p. 1). On October 3, 1994,

Petitioner was sentenced to 180 days imprisonment and three years' probation. (*Id.* at 2). On May 25, 1995, Petitioner was found to have violated his probation and was sentenced to three years imprisonment. (*Id.* at 3–5). In September 1997, the former Immigration and Naturalization Service ("INS") issued Petitioner a Notice to Appear ("NTA") charging him with inadmissibility under 8 U.S.C. §§ 1182(a)(2)(A)(i)(I) and (a)(7)(A)(i)(I). (Doc. 8-1, ¶ 7). An Immigration Judge ("IJ") administratively closed Petitioner's removal proceedings on August 3, 1998. (*Id.*, ¶ 8). Petitioner departed the United States prior to June 6, 2001, pursuant to an agreement in the United States District Court for the Central District of California, and his removal proceedings were dismissed. (*Id.*, ¶ 9); (Doc. 1-1, p. 20).

Petitioner submits that he was paroled into the United States on May 17, 2011, with parole set to expire on January 19, 2012. (Doc. 1-1, p. 19).[1] Petitioner remained in the interior past the expiration of parole without authorization from the INS or Department of Homeland Security ("DHS"). (Doc. 8-6). On October 2, 2013, Petitioner was granted release on recognizance after being arrested and placed in removal proceedings. (Doc. 1-1, p. 8).

More than twelve years later, on January 22, 2026, following Petitioner's arrest during a traffic stop, Petitioner was again taken into custody by Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE/ERO"). (Doc. 8-1, ¶¶ 11–12). ICE/ERO issued Petitioner a NTA on January 30, 2026, again charging him with inadmissibility under §§ 1182(a)(2)(A)(i)(I) and (a)(7)(A)(i)(I). (Doc. 8-2). Petitioner appeared, *pro se*, before an IJ for a master calendar hearing on February 24, 2026, where Petitioner claimed to be a lawful permanent

[1] Respondent has submitted the signed declaration from Deportation Officer Justin Jones, who asserts that that Petitioner was last paroled into the United States on December 26, 2011, set to expire on December 25, 2012. (Doc. 8-1, ¶ 10). There is no further documentation in the record to establish the date or nature of Petitioner's parole. The factual discrepancy as to the date of Petitioner's parole is not material to the outcome of the present petition.

resident. (Doc. 8-1, ¶ 14). The IJ reset Petitioner's case to March 19, 2026, to allow the DHS time to review Petitioner's manner of entry. (*Id.*). On February 26, 2026, the IJ held a bond hearing, but took no action to allow Petitioner time to file evidence. (*Id.*, ¶ 15); (Doc. 8-4). The IJ held a bond redetermination hearing on March 10, 2026, and allowed Petitioner to withdraw his bond request so that he could hire an attorney to respond to DHS's arguments against bond. (Doc. 8-1, ¶ 16); (Doc. 8-5).

On March 18, 2026, the DHS amended the charges set forth in the NTA to change Petitioner's status to that of an "arriving alien" rather than "an alien present in the United States who has not been admitted or paroled." (Doc. 8-6). Petitioner admitted the allegations the following day, and the IJ reset the master calendar hearing to April 7, 2026, for Petitioner to file any applications for relief. (Doc. 8-1, ¶ 18). The IJ held another bond redetermination hearing later that month at Petitioner's request and took no action after Petitioner indicated he had not prepared. (*Id.*, ¶ 19); (Doc. 8-7). Petitioner then appeared at the master calendar hearing on April 7, 2026, which was reset for a week later to allow the parties to determine Petitioner's eligibility for relief. (*Id.*, ¶ 20). Petitioner also filed two applications for relief from removal with the IJ. (*Id.*). The IJ held a bond redetermination hearing the following day and took no action. (*Id.*, ¶ 21); (Doc. 8-8). Following several resets, Petitioner appeared on May 6, 2026, for a merits hearing, and the IJ granted the DHS's motion to "pretermit" one of Petitioner's applications based on his criminal history and to reset the merits hearing for the second application to May 22, 2026. (Doc. 8-1, ¶¶ 22–27).

Petitioner filed this application for habeas relief under 28 U.S.C. § 2241 on March 23, 2026. (Doc. 1). Following the Court's order for response, Respondents have contended that Petitioner is detained both as an "arriving alien" under 8 U.S.C. § 1225(b) and due to his criminal

history under 8 U.S.C. § 1226(c)(1)(A), and, as such, that Petitioner has no statutory right to a bond hearing or release. (Doc. 8). Petitioner has filed a reply to Respondent's response, along with a number of miscellaneous motions. (Docs. 10, 12, 14, 16, 17, 18, 19, 21, 22, 23, 24).

## DISCUSSION

Respondent asserts first that Petitioner is detained pre-final order of removal as an arriving alien, and, as such, his detention is governed by 8 U.S.C. § 1225(b). Respondent also asserts that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A) based on Petitioner's underlying criminal history. In reply, Petitioner asserts that he is not an "arriving alien" due to his presence in the interior of the United States and that a conviction under California Penal Code § 245(a)(1) is not a crime of violence and, as such, does not trigger the mandatory detention clause of § 1226(c)(1). As discussed below, Petitioner is not an "arriving alien" within the meaning of § 1225(b); however, Petitioner is still subject to the mandatory detention clause of § 1226(c) for having been convicted of a crime involving moral turpitude.

### I. Petitioner's Status as an Arriving Alien

Respondent argues first that Petitioner's detention is mandatory as an arriving alien under § 1225(b), and that Petitioner is therefore not entitled to a bond hearing. In Response, Petitioner asserts that he has been living lawfully in the United States for decades and should not be categorized as an arriving alien. Upon careful review, the record indicates that Petitioner is not an "arriving alien" under § 1225(b).

In this case, Petitioner was paroled into the United States in 2011 under 8 U.S.C. § 1182(d)(5), for a set period of one year. (Doc. 1-1, p. 19). That statute provides, in relevant part, that

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily . . . any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

When Petitioner's parole expired at the designated time, he was arrested and placed in removal proceedings and then was released on recognizance under 8 U.S.C. § 1226. (*Id.* at 8); (Doc. 8-6). Because § 1182(d)(5)(A) makes clear that "such parole of such alien shall not be regarded as an admission of the alien," at first glance, Petitioner's argument that he is entitled to a bond hearing under § 1226 would fail. In this particular case, however, the inquiry does not end here because (1) Petitioner's term of parole under § 1882(d)(5)(A) lawfully expired, and (2) Petitioner was most recently released into the interior on an order of recognizance rather than on parole under § 1182(d)(5)(a).

The regulation at 8 C.F.R. § 1.2 makes clear that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2. In this case, Petitioner's parole was not terminated or revoked during its period but rather expired at the end of its designated one-year term. District Courts in this circuit and around the country have found this distinction critical. *See Torres v. U.S. Dep't of Homeland Sec.*, No. 3:26-CV-646-TJC-LLL, 2026 WL 947955, at *4–5 (M.D. Fla. Apr. 8, 2026) (collecting cases). This distinction is further supported by Respondent's asserting in the

amended NTA that Petitioner remained in the United States beyond that period of expiration "without authorization." (Doc. 8-6, p. 1).

Second, and more importantly, Petitioner was arrested in the interior following the expiration of parole and was then released on an order of recognizance.[2] (Doc. 1-1, p. 8). This Order of Release on Recognizance states clearly that Petitioner has been placed in removal proceedings and is being released in accordance with § 1226. (*Id.*). Based on Respondent's own admission that Petitioner remained in the interior without authorization past expiration and that he was subsequently arrested and released pursuant to § 1226, Petitioner is no longer an "arriving alien" within the meaning of § 1225(b) but would be subject to the provisions of § 1226, including the opportunity for release on bond. Nevertheless, as discussed next, Petitioner is not entitled to a bond hearing because he falls within the mandatory detention clause of § 1226(c).

**II. Mandatory Detention for a Conviction Involving a Crime of Moral Turpitude**

Respondent argues next that Petitioner is mandatorily detained under 8 U.S.C. § 1226(c)(1)(A) for his conviction involving a crime of moral turpitude. In response, Petitioner contends that his conviction under California Penal Code § 245(a)(1) is not a crime of violence and that his conviction has since been reduced from a felony to a misdemeanor. Petitioner's arguments are unavailing, and he is properly detained under § 1226(c)(1)(A).

The INA provides that "[t]he Attorney General shall take into custody any alien who is inadmissible by reason of having omitted any offense covered in section 1182(a)(2) of this title." § 1226(c)(1)(A). Concurrently, § 1182(a)(2)(i) provides that "any alien convicted of, or who

[2] This Order of Release on Recognizance lists a different name than Petitioner's at the top of the document, but the A-number is consistent with Petitioner's file number throughout the record. (Doc. 1-1, p. 8).

admits having committed, or who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude . . . is inadmissible."[3] The question then is whether Petitioner's 1994 conviction for assault with a deadly weapon other than a firearm in violation of § 245(a)(1) constitutes a crime of moral turpitude. Relevant precedent establishes that it does.

The Board of Immigration Appeals ("BIA") was presented this question somewhat recently and concluded that an "assault offense in violation of section 245(a)(1) is categorially a crime involving moral turpitude." *Matter of Wu*, 27 I. & N. Dec. 8, at *1 (BIA 2017). The United States Court of Appeals for the Ninth Circuit, the jurisdiction out of which Petitioner's conviction arises, has confirmed this interpretation in a separate case and determined that a petitioner was inadmissible under the INA due to his conviction under § 245(a)(1) qualifying as a crime involving moral turpitude. *Safaryan v. Barr*, 975 F.3d 976, 988 (9th Cir. 2020).

Petitioner argues that he is no longer removable under § 1226(c)(1)(A) due to the Ninth Circuit's recent decision in *United States v. Gomez*, 115 F.4th 987 (9th Cir. 2024), reh'g en banc granted, opinion vacated, 133 F.4th 1083 (9th Cir. 2025), and on reh'g en banc, 165 F.4th 1199 (9th Cir. 2026), cert. denied, 224 L. Ed. 2d 842 (May 18, 2026). In *Gomez*, a criminal appeal, the Ninth Circuit held that convictions under § 245(a)(1) do not qualify as crimes of violence for purposes of the career offender enhancement in the federal sentencing guidelines. *Id.* at 990. Petitioner's argument is unavailing for two reasons. First, that decision was vacated in light of the Ninth Circuit's decision to hear the case *en banc*. 133 F.4th at 1083. Second, and more importantly, the Ninth Circuit's subsequent decision, while sitting *en banc*, that a conviction under § 245(a)(1) does not qualify as a crime of violence in the context of the federal sentencing guidelines does not

[3] § 1182(a)(2)(i)(I) contains an exception clause for "a purely political offense" that is not applicable to Petitioner.

change that holding the crime is still one of moral turpitude in the context of the INA. *See United States v. Gomez*, 165 F.4th 1199, 1217 n.1 (9th Cir. 2026) (Collins, J., concurring in part) ("I do not discern anything in the majority's decision that calls into question *Safaryan*'s holding that § 245(a)(1) is categorically a crime involving moral turpitude.") (citing *Safaryan*, 975 F.3d at 988). Because Petitioner's conviction under § 245(a)(1) qualifies as a crime of moral turpitude under the provisions of § 1182(a)(2)(i), Petitioner is properly detained under § 1226(c)(1)(A).

**III. Length of Detention**

Finally, the Court moves to the length of Petitioner's detention. In *Demore v. Kim*, the Supreme Court held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as [Petitioner here] be detained for the brief period necessary for their removal proceedings." *Denmore v. Kim*, 538 U.S. 510, 513 (2003). Although the text of § 1226(c) does not set a limit on the time Respondent may detain Petitioner, the Supreme Court of the United States, in *Jennings v. Rodriguez*, has held that "§ 1226(c) has a definite termination point: the conclusion of removal proceedings." 583 U.S. 281, 304 (2018) (cleaned up). Respondent argues that *Demore* supports Petitioner's continued detention because of his active removal proceedings. (Doc. 8, pp. 7–10).

The period of detention under § 1226(c) is not limitless, however. As the Eleventh Circuit has explained, "[w]hile *Demore* upheld § 1226(c)'s provision mandating detention of criminal aliens during removal proceedings, it did so with a strong constitutional caveat about due process concerns as to continued mandatory detention where the duration of the removal proceedings is unreasonably long or delayed. *Sopo v. U.S. Att'y Gen*, 825 F.3d 1199, 1212 (11th Cir. 2016),

*vacated as moot*, 890 F.3d 952 (11th Cir. 2018).[4] The Eleventh Circuit rejected a brightline rule such as the six-month period prescribed in *Zadvydas v. Davis*, 533 U.S. 678 (2001) and identified five non-exhaustive factors for district courts to consider when determining whether detention without a bond hearing under § 1226(c) was unconstitutionally prolonged. *Sopo*, 825 F.3d at 1217–18.

First, courts should consider the length of time a petitioner has been detained without a bond hearing. *Id.* at 1217. *Soto* suggested that the "outer limit of reasonableness" without a bond hearing would arise by the one-year mark. *Id*. The detention period may be unreasonable prior to this length, and it is the Court's duty to determine "whether the purposes of the statute—preventing flight and criminal acts—are being fulfilled, and whether the government is incarcerating the alien for reasons other than risk of flight or dangerousness." *Id.* (citation omitted). Petitioner here has now been detained for over seven months, and his removal proceedings appear to be moving forward at an appropriate schedule. As such, this factor does not weigh in favor of Plaintiff.

Next, a court should look to why a petitioner's removal proceedings have become protracted. *Id.* at 1218. "Courts should consider whether the government or the criminal alien have failed to participate in the removal proceedings or sought continuances and filing extension that delayed the case's progress." *Id.* (citation omitted). Here, Petitioner has had numerous appearances before an IJ that have been continued due to Petitioner's subsequent applications and requests for

---

[4] Although the *Sopo* decision was vacated, courts continue to cite *Sopo* as persuasive authority. *See N.D. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-62-CDL-AGH, 2026 WL 745264, at *2 (M.D. Ga. Feb. 6, 2026), report and recommendation adopted, No. 4:25-CV-62 (CDL), 2026 WL 738596 (M.D. Ga. Mar. 16, 2026); *Lugo Ortiz v. Warden, Fla. Soft-Sided Facility*, No. 2:26-CV-01855-SPC-KRH, 2026 WL 1751797 (M.D. Fla. June 18, 2026).

extensions.[5] (Doc. 8-1, ¶¶ 18–27); (Docs. 8-4; 8-5; 8-7; 8-8). As such, this factor weighs in favor of Respondents.

*Soto* identified three more factors that a court may consider:

> (3) whether it will be possible to remove the criminal alien after there is a final order of removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention.

*Id.* (citations omitted).

Petitioner has not identified any evidence that would weigh these factors in favor of him such that he would be entitled to relief. The record shows that Petitioner filed this action two months after he entered ICE/ERO custody (now seven months), and his removal proceedings appear to have proceeded steadily. There is also no reason to believe on the current record that Petitioner will not obtain a final order of removal against him in a reasonably expeditious manner. Therefore, Petitioner is not entitled to the relief he requests at this time.

## IV. Motion for Discovery

Petitioner has filed a motion for discovery (Doc. 16), in which he requests that the Court "direct Respondents to produce all communications between ICE, Office of Principal Legal Adviser, US Attorneys[,] Any and all telephone logs, all emails between agencies and departments[,] DO J. Jones, SDDO Stephens, her supervisors, Atlanta ICE/ERO Office, FBI, US

---

[5] Petitioner asserts that that he has never asked for an extension, but he has not provided any evidence to refute Respondent's representations. (Doc. 12, p. 5).

Attorney's office, and other departments and agencies, who involved if any [sic]." (Doc. 16, p. 2). Petitioner has not provided or identified good cause as to why this discovery is necessary.

"Unlike typical civil litigants, habeas petitioners are 'not entitled to discovery as a matter of ordinary course.'" *Bowers v. U.S. Parole Comm'n, Warden*, 760 F.3d 1177, 1183 (11th Cir. 2014) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). Rather, upon a showing of good cause, a court may, in its discretion, grant discovery to a habeas petitioner. *Id.* "'Good cause is demonstrated where specific allegations show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.'" *Bowers*, 760 F.3d at 1183 (quoting *Arthur v. Allen*, 459 F.3d 1310, 1310–11 (11th Cir. 2006)). In the absence of any showing of good cause, Petitioner's motion for discovery (Doc. 16) is **DENIED**.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that Petitioner's Section 2241 petition (Doc. 1) be **DENIED**. It is further **RECOMMENDED** that Petitioner's motions for TRO (Docs. 10, 23), motions for release (Docs. 17, 18, 21, 24), motion to seal (Doc. 19), and motion to be returned to the district (Doc. 22) be **DENIED as moot**. It is hereby **ORDERED** that Petitioner's motion for discovery (Doc. 16) be **DENIED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 25th day of August, 2026.

s/ Charles H. Weigle__________
Charles H. Weigle
United States Magistrate Judge